UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
Case No. 9:18-cv-80110-Rosenberg / Reinhart

WEBSTER HUGHES,

        Plaintiff,

vs.

PRIDEROCK CAPITAL PARTNERS, LLC,

        Defendant.

_____

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Defendant, Priderock Capital Partners, LLC ("Priderock" or "Defendant"), moves for summary judgment on two of Plaintiff Webster Hughes' ("Hughes" or "Plaintiff") three claims pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1(a) and 56.1 of the United States District Court for the Southern District of Florida, and it submits this Memorandum of Law in Support.[1]  Priderock respectfully requests the Court enter summary judgment in favor of Priderock and against Hughes on Count I (breach of contract) and Count II (breach of contract implied-in-fact) of the Complaint.

---

[1] In accordance with the Court's Order (DE 6), Priderock has simultaneously filed Defendant's Statement of Material Facts in Support of its Motion for Partial Summary Judgment, references to which will be cited as "SOF ___".  For the purpose of providing context, Priderock includes a Summary of Undisputed Facts below.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1
MEMORANDUM OF LAW ..................................................................................................... 2
I.   PROCEDURAL HISTORY........................................................................................... 2
II.  SUMMARY OF UNDISPUTED FACTS ..................................................................... 3
III. ARGUMENT.................................................................................................................. 4
    a.  Standard of Review............................................................................................ 4
    b.  Count I (Breach of Contract) and Count II (Breach of Contract Implied-in-Fact) Are Barred by Florida's Statute of Frauds. .................................................................. 5
    c.  Hughes Cannot Establish a Prima Facie Claim for a Viable Oral Contract (Count I) or Contract Implied-In-Fact (Count II) Because There Was Never a Meeting of the Minds on the Essential Terms. ............................................................. 11
IV.  REQUEST FOR HEARING........................................................................................ 13
V.   CONCLUSION............................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Fluid Sols., LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
  No. 11-cv-16-Orl-22KRS, 2011 WL 3627413 (M.D. Fla. July 26, 2011) ...............................11

*Advanced Prot. Techs., Inc. v. Square D Co.*,
  390 F. Supp. 2d 1155 (M.D. Fla. 2005) ......................................................................................6

*All Brand Importers, Inc. v. Tampa Crown Distribs., Inc.*,
  864 F.2d 748 (11th Cir. 1989) ....................................................................................................6

*Alpha Data Corp. v. HX5, L.L.C.*,
  139 So. 3d 907 (Fla. Dist. Ct. App. 2013) ..................................................................................9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)....................................................................................................................5

*Chernys v. Standard Pac. of S. Fla., G.P. Inc.*,
  No. 07-21605-CIV-LENARD/GARBER, 2010 WL 11504280 (S.D. Fla. Feb.
  10, 2010) ...................................................................................................................................10

*CSX Transp., Inc. v. Prof'l Transp., Inc.*,
  467 F. Supp. 2d 1333 (M.D. Fla. 2006) ....................................................................................11

*Dwight v. Tobin*,
  947 F.2d 455 (11th Cir. 1991) ....................................................................................................6

*Fin. Healthcare Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cty.*,
  488 F. Supp. 2d 1231 (S.D. Fla. 2007) .......................................................................................7

*First Realty Inv. Corp. v. Gallagher*,
  345 So. 2d 1088 (Fla. Dist. Ct. App. 1997) ................................................................................6

*Hulse v. Orthodontic Educ., Ltd.*,
  No. 3:05-cv-594-J-32TEM, 2011 WL 32437 (M.D. Fla. Jan. 5, 2011)....................................12

*Jacobs v. City of W. Palm Beach*,
  14-CV-80964, 2015 WL 4742906 (S.D. Fla. Aug. 10, 2015) ....................................................5

*Marcus v. Garland, Samuel & Loeb, P.C.*,
  441 F. Supp. 2d 1227 (S.D. Fla. 2006) .......................................................................................7

*Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*,
  857 F. Supp. 2d 1294 (S.D. Fla. 2012) .....................................................................................13

*Pineda v. PRC, LLC*,
 No. 1:11-CV-20894-JLK, 2011 WL 3022564 (S.D. Fla. July 22, 2011) .................................6

*Resnick v. AvMed, Inc.*,
 693 F.3d 1317 (11th Cir. 2012) ..............................................................................................6

*Roberts v. Stutman*,
 No. 09-80490-CIV, 2011 WL 13225074 (S.D. Fla. Jan. 19, 2011)..........................................8

*Senter v. JPMorgan Chase Bank, N.A.*,
 810 F. Supp. 2d 1339 (S.D. Fla. 2011) ..................................................................................11

*Servicios de Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*,
 No. 06-22774-CIV-HUCK/SIMONTON, 2007 WL 628133 (S.D. Fla. Feb.
 26, 2007) ................................................................................................................................11

*In re Sherwood Investments Overseas Ltd., Inc.*,
 No. 6:10-AP-00158-KSJ, 2015 WL 4486470 (Bankr. M.D. Fla. July 22,
 2015), *aff'd*, No. 615CV1469ORL40TBS, 2016 WL 5719450 (M.D. Fla. Sept.
 30, 2016) ................................................................................................................................12

*In re US Capital Holdings, LLC*,
 No. 12-14517-JKO, 2013 WL 5297352 (Bankr. S.D. Fla. Aug. 5, 2013).................................6

*Walker v. Darby*,
 911 F.2d 1573 (11th Cir. 1990) ...............................................................................................5

**Statutes**

Fla. Stat. § 725.01 ..........................................................................................................................5, 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).....................................................................................................................2

Fed. R. Civ. P. 56(c) .........................................................................................................................5

**PRELIMINARY STATEMENT**

Priderock is an asset management company that develops, owns, and operates multifamily rental properties throughout the country, among other investments. In the summer of 2015, Webster Hughes affiliated with Priderock to assist launching an investment fund to invest in certain mortgage-backed securities offered by the Federal Home Loan Mortgage Corporation, known as Freddie Mac (the "Fund"). Hughes agreed to work for free prior to the date the Fund launched with the hope – if the Fund launched successfully – the parties would reach an agreement on a contract for future services with the Fund. In April 2016, a year before the Fund actually launched in 2017, Hughes alleges Priderock orally agreed to pay him $200,000 per year for a multi-year term lasting the life of the Fund (seven to eight years), plus ten percent of the promote share of returns of the Fund (a type of bonus payable when certain long-term securities mature), to reimburse him for certain expenses and to pay him a licensing fee for use of a certain database. Priderock denies the parties ever reached an agreement, oral or otherwise. Thereafter, Hughes and Priderock exchanged numerous written contract proposals between October 2016 and May 2017, all of which were for fixed multi-year terms. By June 2017, the parties had not agreed on terms, Priderock ended negotiations and terminated the parties' relationship.

Summary judgment should be granted on Hughes' breach of oral contract and breach of contract implied-in-fact claims for two separate, independent reasons: (1) the alleged oral agreement is barred by Florida's Statute of Frauds, as a matter of law; and (2) there was no meeting of minds on essential terms of the alleged agreement.

First, undisputed facts establish the parties intended at all times to enter into a contract lasting well more than one year, and the multi-year contract Hughes alleges could not have been performed within one year. Consequently, Count I (breach of contract) and Count II (breach of contract implied-in-fact) are barred by Florida's Statute of Frauds. On June 18, 2018, the Court

adopted Magistrate Judge Reinhart's Report and Recommendation denying Priderock's Rule 12(b)(6) motion to dismiss Counts I and II, stating the Statute of Frauds "is more appropriately raised at a later stage of the proceedings when evidence can be presented as to the intent of the parties." (DE 28, 29.) Hughes' sworn deposition testimony conclusively answers the question of intent relevant to the Statute of Frauds: "Q [Priderock counsel]: Your intent was to have a multiyear agreement? A [Hughes]: Yes, that was my intent." (SOF 37, Exhibit A, Hughes Dep. at 81:12-18.) The contract proposals exchanged by the parties, as well as the record of their contract negotiations unambiguously confirm the parties never contemplated any contract term less than two years. (SOF 17-49.)

Second, no reasonable jury could find that there was a meeting of the minds on the essential terms of the alleged oral agreement. Hughes alleges the parties reached an oral agreement in April 2016, yet in October 2016 Hughes sent Priderock the first of several written contract proposals, and thereafter negotiated with Priderock over the next nine months as to the essential terms of an agreement, including: the duration/term of the agreement, his compensation, and the scope of his duties. The undisputed record of the parties' months-long negotiations confirms there was no meeting of the minds on the essential terms of an agreement.

## **MEMORANDUM OF LAW**

### I.     PROCEDURAL HISTORY

On January 31, 2018, Hughes filed suit against Priderock in the Southern District of Florida. (DE 1.) Priderock moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Count I (breach of contract) and Count II (breach of contract implied-in-fact) because the parties' alleged oral contract is barred by Florida's Statute of Frauds. (DE 9, 18.) The Court denied Priderock's motion, reasoning:

> At this stage of the proceedings, the Court must confine its determination to the four corners of the Complaint and accept all allegations as true. Upon review of the Complaint, it is not unclear whether the parties intended to enter into a contract that would last more than one year at the time the agreement was made. Further, the Complaint does not allege that the contract could not be performed within one year. Thus, application of the statute of frauds to Counts I and II of the Complaint is more appropriately raised at a later stage of the proceedings when evidence can be presented as to the intent of the parties.

(DE 28, adopted by the Court DE 29.)

## II.    SUMMARY OF UNDISPUTED FACTS

In mid-2015, Hughes affiliated with Priderock to assist launching the Priderock Multifamily Debt Opportunity Fund ("Fund"), an investment fund that focused on acquiring certain restricted mortgage backed securities offered by the Federal Home Loan Mortgage Corporation, known as Freddie Mac. (SOF 6, 9, 11.) There is no dispute that the parties agreed the work Hughes performed prior to the date the Fund launched would be uncompensated -- the same terms that applied to others working on formation of the Fund prior to the date the Fund launched. (SOF 10.) There is also no dispute the parties never reached a written agreement setting the terms of Hughes' compensation for the work he performed or proposed to perform in the future on behalf of Priderock. (SOF 16.)

With no written agreement, Hughes predicates his Complaint on an alleged oral contract he claims with Priderock. Hughes alleges that on April 27, 2016 – a year before the Fund launched – the parties "orally agreed" that "Dr. Hughes would be compensated in the amount of $200,000 per year for the life of [the Fund], plus 10 percent of the 'promote share' of the returns of the Fund, reimbursement for his expenses, and a licensing fee arrangement." (SOF 12.) It is undisputed that the life of the Fund is seven to eight years, but could be up to 10 years. (SOF 13, 45-46.) It is also undisputed that Hughes understood any agreement with Priderock required him to perform work on an ongoing basis during the duration of the multi-year term. (SOF 14.)

Despite the alleged April 2016 oral agreement, Hughes proceeded to submit a number of written contract proposals to Priderock starting in October 2016. (SOF 17.) Hughes' first proposal dated October 24, 2016, and every subsequent revised proposal, defined the fixed duration/term of Hughes' employment as continuing for multiple years. (SOF 20, 24, 29, 43-45, 49, 51.) Every one of Hughes' contract proposals encompassed the entirety of his business relationship with Priderock, including all work performed during the contingent pre-launch period from September 2015 to April 2017. (SOF 19, 23, 29, 48.) Hughes admits that Priderock, too, desired a multi-year contract that required Hughes to devote 90 percent of his work time to Priderock preparing monthly updates to cash flows and financial models, among other tasks to be performed over the multi-year term of the agreement. (SOF 32-35.) For example, Hughes' April 20, 2017 proposal defines "Expected Services (pre-launch and life of investments)" to include: 1) Provide, maintain, and enhance WH/Metrix proprietary models and databases; 2) Provide dedicated support for capital raising; 3) Advise on purchase and financing transactions; 4) Monitor investments and support investor relations. (SOF 48.) Hughes was obligated to perform these tasks over multi-year periods – at least two years and as long as the "life of the Fund" (7-10 years), which self-evidently could not have been performed within a year. (SOF 21, 35-36, 48-49.)

After exchanging more than ten contract proposals without reaching an agreement on the essential terms of Hughes' contract, including: the duration/term of the agreement, his compensation and the scope of his duties, Priderock ended the negotiations and its relationship with Hughes. (SOF 17-52.)

### III. ARGUMENT

#### a. Standard of Review

Summary judgment is appropriate where, as here, the record "show(s) that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

4

law." Fed. R. Civ. P. 56(c). While the burden of establishing the nonexistence of any genuine issue of material facts falls on the party moving for summary judgment, the moving party satisfies this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

Once the moving party satisfies this burden, "the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Jacobs v. City of W. Palm Beach*, 14-CV-80964, 2015 WL 4742906, at *1 (S.D. Fla. Aug. 10, 2015). As the Eleventh Circuit explained, the existence of "a mere scintilla of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

> **b.    Count I (Breach of Contract) and Count II (Breach of Contract Implied-in-Fact) Are Barred by Florida's Statute of Frauds.**

Florida's Statute of Frauds prohibits the enforcement of oral agreements not capable of being performed within one year. Fla. Stat. § 725.01. Section 725.01 of the Florida Statutes provides, in pertinent part, that:

> No action shall be brought ... upon any agreement that is not to be performed within the space of [one] year from the making thereof ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith ....

Fla. Stat. § 725.01 (2018).

Hughes alleges the parties "orally agreed" on April 27, 2016, and/or "by their conduct" that "Dr. Hughes would be compensated in the amount of $200,000 per year for the life of [the Fund], plus 10 percent of the 'promote share' of the returns on the Fund, reimbursement for his

5

expenses, and a licensing fee arrangement." (SOF 12; Exhibit F at ¶¶ 17-18, 36, 42; Exhibit H, Pl.'s Response to Interrogatory No. 3; SOF 16, Hughes Dep. 69:5-7 ("Q: You never had a written agreement with Priderock, right? A: That's correct.")) Counts I and II are each barred by the Statute of Frauds because Hughes seeks to enforce an oral or implied-in-fact agreement for a multi-year term, which was not capable of being performed within one year.[2]

### i.   The Parties Contemplated a Multi-Year Agreement.

"Under well-settled Florida law, the statute of frauds bars the enforcement of a contract when the parties intended and contemplated that performance of the agreement would take longer than one year." *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991); *see also First Realty Inv. Corp. v. Gallagher*, 345 So. 2d 1088, 1089 (Fla. Dist. Ct. App. 1997) (recognizing that "[t]he primary factor to be utilized in determining whether or not an oral contract is to be performed within the one year limitation of the statute is, of course, the intent of the parties.")

"The intent of the parties may be inferred from the 'surrounding circumstances' or the 'object to be accomplished.'" *Dwight*, 947 F.2d at 459 citing *Yates v. Ball*, 132 Fla. 132, 139 (1937). Courts rely on deposition testimony and written proposals to determine intent. *See, e.g.*, *All Brand Importers, Inc. v. Tampa Crown Distribs., Inc.*, 864 F.2d 748, 750 (11th Cir. 1989) (citing parties' deposition testimony, among other evidence, as factors "that Tampa Crown and All Brand intended for their relationship to last for more than one year."); *Advanced Prot. Techs., Inc.*

---

[2] "Florida courts use breach of contract analysis to evaluate claims of breach of contract implied in fact[.]" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012). Here, Hughes' alleged "contract implied-in-fact" claim (Count II) is identical to oral "contract" claim (Count I). (DE 44 at ¶¶ 35-46) ("Priderock would compensate Dr. Hughes for his work for Priderock in the amounts set forth in paragraph 17-18 of this complaint."). Courts apply the Statute of Frauds with equal force to <u>both</u> oral contract and contract implied-in-fact claims. *See, e.g. Pineda v. PRC, LLC*, No. 1:11-CV-20894-JLK, 2011 WL 3022564, at *4 (S.D. Fla. July 22, 2011) ("The alleged oral agreement fails to meet the requirements of the Statute of Frauds because the **implied contract** would not necessarily be completed within one year.") (emphasis added); *In re US Capital Holdings, LLC*, No. 12-14517-JKO, 2013 WL 5297352, *9-12 (Bankr. S.D. Fla. Aug. 5, 2013) ("It is undisputed that the alleged Oral Contract which FMMMC seeks to enforce is **oral or implied-in-fact**, and does not exist in writing. Florida's statute of frauds § 725.01, Fla. Stat., stands as an absolute bar to the imposition of liability on USFM for the Closing Fee.") (citations omitted) (emphasis added).

*v. Square D Co.*, 390 F. Supp. 2d 1155, 1161 (M.D. Fla. 2005) (joint venture agreement barred by the statute of frauds because "Plaintiff's President stated in his deposition that Plaintiff and SQD agreed that the joint venture would be extremely long-term and that it was going to take many years to build and grow the business, implicit in this testimony is the assertion that it was the intent of the parties that the alleged joint venture would last for more than one year.")

Hughes and Priderock intended nothing less than a multi-year contract that is established by undisputed record evidence:

> 1) Hughes' testimony that he sought to have a multi-year agreement with Priderock for the "life of the Fund";
>
> 2) Priderock and Hughes' testimony that the "life of the Fund" was a period of seven or more years, and
>
> 3) every written contract proposal exchanged by the parties was for a period of no less than two years of active, full-time service to Priderock.

*First*, Hughes unequivocally testified he intended the agreement with Priderock would be for a multi-year term. (SOF 37, Exhibit A, Hughes Dep. 81:12-18 ("Q: Your intent was to have a multiyear agreement? A: **Yes, that was my intent**.") (emphasis added)). Such an oral multi-year agreement is barred by the Statute of Frauds. *Fin. Healthcare Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cty.*, 488 F. Supp. 2d 1231, 1239 (S.D. Fla. 2007) ("Here, the Contract was to be performed over the course of three years, making the statute of frauds applicable."); *Marcus v. Garland, Samuel & Loeb, P.C.*, 441 F. Supp. 2d 1227, 1232 (S.D. Fla. 2006) (barring an oral agreement by statute of frauds because plaintiff fully understood the agreement would potentially last several years).

*Second*, it is undisputed that the "life of the Fund" was understood by the parties to be a period of well more than one year, and the work Hughes was to provide could not be completed in a year. Hughes admits that the "the life of the Fund" is "seven-years…. which could extend to

7

eight years." (SOF 13, 45, Exhibit A, Hughes Dep. 31:17-32:13; 97:9-16 (Q: "In your e-mail you mentioned again your preferences for fixed compensation to the life of the investment, and I understand from your earlier testimony, … that is matched to the life of the bond. So it could be seven years. It could be whatever the life of the bond is; is that right? A: Yes, it is.")) Priderock estimated that the "[t]he fund life could be up to 10 years." (SOF 46.)  Hughes also admits that after the launch of the Fund he still had to perform work on an "ongoing basis," including reviewing monthly Freddie Mac servicing reports and reconciling the model predictions with the actual numbers. (SOF 14.)  In fact, Hughes testified that he worked for Priderock on a "fully dedicated basis," "characteriz[ing] it as essentially full-time work" and he provided no other services to any others during that nearly two-year time period, including after the Fund launched. (SOF 15.) Moreover, Hughes admits that if the parties reached an acceptable agreement, he was willing to devote 90 percent of his time to Priderock. (SOF 35.)

In *Roberts v. Stutman*, No. 09-80490-CIV, 2011 WL 13225074, at *3 (S.D. Fla. Jan. 19, 2011), the Court determined the parties' alleged oral agreement for "the life of the account" ran afoul of the Statute of Frauds because a number of "factors indicate that Roberts and RBCCM intended for their relationship to last for more than one year." *Id*. at *5. Similarly, the unambiguous testimony is that the "life of the Fund" is greater than one year, and in fact, many years, confirming that the parties intended and contemplated a multi-year agreement.

***Third***, the parties exchanged numerous written contract proposals between October 2016 and May 2017, and every version and/or communication on the topic proposes a multi-year term consisting of Hughes providing on-going services:

- Hughes' October 24, 2016 contract proposed a four-year term (SOF 20);
- Hughes' November 4, 2016 contract proposed a four-year term (SOF 24);

8

- Hughes' December 20, 2016 contract proposed a four-year term with a clause allowing parties to revoke after two years (SOF 29);

- Priderock's January 24, 2017 contract proposed a one-year term (SOF 32);

- Hughes' January 25 email states he wants a "long term deal" and Priderock a deal of "moderate duration" (SOF 36);

- Priderock's February 1, 2017 contract proposed a two-year term (SOF 39);

- Hughes' February 6, 2017 contract proposed that the contract would expire on the Fund termination date (in approximately 7-10 years) (SOF 45);

- Priderock's February 7, 2017 email reiterating its contact proposal of a two-year term (SOF 46);

- Hughes' April 20, 2017 contract proposed the term be for "life of the Fund" (at least seven years according to Hughes) (SOF 13, 45, 49);

- Hughes' May 25, 2017 contract proposed a three-year term (SOF 51).

These ten contract proposals confirm the parties contemplated and intended that Hughes' contract with Priderock would last multiple years, bringing it within the Statute of Frauds as a matter of law. *Alpha Data Corp. v. HX5, L.L.C.*, 139 So. 3d 907, 910 (Fla. Dist. Ct. App. 2013) ("Here, it is undisputed that HX5 never signed the proposed Mentor–Protege Agreement ADC sent to it. It is clear from the record and, according to the terms of the unsigned agreement that ADC sent to HX5, and which forms the basis of the alleged oral contract, this partnership was intended to last three years, thus bringing it within the Statute and, consequently, unenforceable.")

### ii. The Alleged Multi-Year Agreement Could Not Be Performed Within One Year.

The alleged multi-year contract could not be performed within a year.  Hughes admits the work performed on the Fund before it launched from September 2015 to April 2017 was provided for free.  (SOF 10.)  Hughes also admits after the Fund launched in April 2017, he was required to perform on going services.  (SOF 14, Exhibit A, Hughes Dep. 33:8-35:15 ("Q: After the fund is

9

launched you still have work to perform with respect to your model; is that correct? A: A small amount."); *see also* SOF 35.) Each of Hughes' many written contract proposals defined the scope of his duties to require dedicated, on-going work over the full term of the multi-year terms stated in every proposal.

Specifically, Hughes' contract proposals dated October 24, 2016, November 4, 2016, and December 20, 2016 each obligate him to continuously perform "Executive Responsibilities" for the duration of the multi-year terms. (SOF 19-21, 23-24, 29.)  **For a period of no less than two years**, Hughes promised to "[p]rofessionally represent himself to … clients, investors, Freddie Mac, bankers … vendors … as a dedicated full-time executive of [Priderock Multi-Family Debt Opportunity Fund Opportunity] Company … provide timely advice, information, analyses, research, and written materials to support [Priderock Multi-Family Debt Opportunity Fund Opportunity Company] business plans, strategy, sales, marketing … transaction negotiations … [m]anage the design, implementation, maintenance, and application of … [Priderock Multi-Family Debt Opportunity Fund Opportunity Company] proprietary financial models and loan performance databases."  (SOF 19, 21.) Hughes' April 20, 2017 contract proposed a seven-year term during which he was to provide "Expected Services (**pre-launch and life of investments**)" to include: "1) Provide, maintain, and enhance WH/Metrix proprietary models and databases; 2) Provide dedicated support for capital-raising; 3) Advise on purchase and financing transactions; 4) Monitor investments and support investor relations." (SOF 48-49 (emphasis added).)

Every written contract proposal Hughes submitted and his testimony establish he was not capable of fulfilling his obligations to Priderock in a period of less than one year.  (SOF 19-21, 23-24, 29, 42-45, 48-49.) Consequently, Hughes' oral and implied-in-fact contract claims are barred by the Statute of Frauds. *Chernys v. Standard Pac. of S. Fla., G.P. Inc*., No. 07-21605-CIV-

LENARD/GARBER, 2010 WL 11504280, at *4 (S.D. Fla. Feb. 10, 2010) ("Thus, it is clear that both the object of the alleged agreement, a promise to pay Chernys profit sharing more than two years after the date of the agreement, and the circumstances surrounding the agreement, indicate the parties could not have understood the agreement to have been performed within one year from the time it was made.")

      **c.**      **Hughes Cannot Establish a *Prima Facie* Claim for a Viable Oral Contract (Count I) or Contract Implied-In-Fact (Count II) Because There Was Never a Meeting of the Minds on the Essential Terms.**

Independent of the Statute of Frauds defense, summary judgment must be granted on Hughes' breach of oral contract claim (Count I) and breach of contract implied-in-fact (Count II) because Hughes cannot provide facts establishing the parties' alleged agreement is anything more than an unenforceable "agreement to agree." Under Florida law, a plaintiff claiming breach of contract (oral or implied-in-fact) must allege: (1) a valid contract, (2) a material breach, and (3) resulting damages, as well as performance of its own contractual obligations. *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1345 (S.D. Fla. 2011); *Advanced Fluid Sols., LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, No. 11-cv-16-Orl-22KRS, 2011 WL 3627413, at *3 (M.D. Fla. July 26, 2011). To establish a valid contract, a plaintiff must allege: "(1) an offer; (2) acceptance of the offer; (3) consideration; and (4) sufficient specification of the essential terms of the agreement." *Senter,* 810 F. Supp. 2d at 1345.

Under Florida law, an "agreement to agree" at a future date is not enforceable. *See Servicios de Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*, No. 06-22774-CIV-HUCK/SIMONTON, 2007 WL 628133, at *3 (S.D. Fla. Feb. 26, 2007). Florida courts have repeatedly held that "'where the essential terms of an agreement remain open, subject to future negotiation, there can be no enforceable contract.'" *CSX Transp., Inc. v. Prof'l Transp., Inc.*, 467 F. Supp. 2d 1333, 1340 (M.D. Fla. 2006) (quoting *Suggs*

11

*v. Defranco's, Inc.*, 626 So. 2d 1100, 1101 (Fla. Dist. Ct. App. 1993)). Further, any "so-called 'contract to make a contract' is not a contract at all," "if the document or contract that the parties agree to make is to contain any material term that is not already agreed on." *Hulse v. Orthodontic Educ., Ltd.*, No. 3:05-cv-594-J-32TEM, 2011 WL 32437, at *3 (M.D. Fla. Jan. 5, 2011)

> As the court in *In re Sherwood Investments Overseas Ltd., Inc.*, explained:
>
> The key difference is the manner in which assent is ascertained: conduct as opposed to words. None of RBS's conduct shows an assent to be bound by Sherwood's audacious proposed contractual terms. "Because a contract implied-in-fact is a legal contract based on an unspoken agreement, and [Sherwood] presented no evidence from which a reasonable jury could find that an unspoken agreement existed between the parties," Sherwood has failed to prove by the undisputed material facts any breach by RBS of the implied-in-fact contract between the parties. RBS is entitled to summary judgment on the breach of contract counts, Counts I through III.

No. 6:10-bk-00584-KSJ, 2015 WL 4486470, at *11 (Bankr. M.D. Fla. July 22, 2015), *aff'd*, No. 6:15-cv-1469-Orl-40TBS, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016).

Here, the parties exchanged ten written proposals (after Hughes alleges they reached an oral agreement), and they did not agree whether the contract term should be two or four or ten years, nor did they agree on Hughes' compensation or reimbursement of his expenses. (*See* SOF 17-52.) Hughes' final proposal was tendered on May 25, 2017. (SOF 51.) Hughes' counsel emailed Priderock's counsel stating Hughes' proposal that "Priderock will cause Webster to be paid $200,000.00 per year commencing 4/17/17 for 3 years." (SOF 51.) Priderock rejected this proposal and advised Hughes that after 18 months trying to reach an agreement, it was terminating the negotiations. (SOF 52.) Hughes' own documents and those of his counsel establish the parties continued to negotiate the essential terms of his compensation agreement without reaching consensus—including contract duration and compensation, etc.—well after the point when such an oral agreement was allegedly reached, thus vitiating any claim for breach of oral

12

contract.  *See Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301-2 (S.D. Fla. 2012).

## IV.     REQUEST FOR HEARING

For the reasons discussed above, Defendant requests a hearing before the Court.  Defendant estimates that arguments would take no more than one hour.

## V.      CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion for partial summary judgment and dismiss Counts I and II with prejudice.

Dated: December 4, 2018

Respectfully submitted,

MRACHEK FITZGERALD ROSE
KONOPKA THOMAS & WEISS, P.A.
505 South Flagler Drive
Suite 600
West Palm Beach, FL 33401
(561) 655-2250
(561) 655-5537 (facsimile)
rfitzgerald@mrachek-law.com

By: *s/ Roy E. Fitzgerald*
         Roy E. Fitzgerald

-and-

WINSTON & STRAWN LLP
William G. Miossi (*pro hac vice*)
Mary M. Lenahan (*pro hac vice*)
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5000
(202) 282-5100 (facsimile)
WMiossi@winston.com
MLenahan@winston.com

*Attorneys for Defendant Priderock Capital Partners, LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing Defendant's Motion for Partial Summary Judgment and Memorandum in Support was served by CM/ECF on December 4, 2018, on:

John F. Mariani
Christopher W. Kammerer
Kammerer Mariani PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
(561) 990-1590
(561) 228-0998 (facsimile)
jmariani@kammerermariani.com
ckammerer@kammerermariani.com

*s/ Roy E. Fitzgerald*
