# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 9:18-cv-80110-ROSENBERG/REINHART

WEBSTER HUGHES,

          Plaintiff,

vs.

PRIDEROCK CAPITAL PARTNERS, LLC,

          Defendant.
_____/

## **DECLARATION OF WEBSTER HUGHES, Ph.D**

Pursuant to 28 U.S.C. § 1746, I, Webster Hughes, hereby declare as follows:

1. My name is Webster Hughes. I make this Declaration based on my personal knowledge.

2. I was first contacted by Priderock Capital Partners LLC ("Priderock") in July 2015.

3. My financial relationship with Priderock concerning the formation and launching of the Priderock Multifamily Debt Opportunity Fund (the "Fund") was a contingency one.

4. Similar to a lawyer who represents a client for a share of the outcome of the client's case, payment to me under the agreement between Priderock and me was contingent upon the launch of the Fund.

5. The launch of the fund would occur upon the Fund's first purchase of K-Deal securities and was dependent upon Priderock raising sufficient investor funds.

6. Neither Priderock nor any of its principals or employees had ever sponsored this type of fund or had any prior experience with the securities that the proposed fund would purchase.

7. As a result, there was high uncertainty that the venture would be successful and result in money compensation and/or reimbursement for my very substantial allocated time and expenses.

8. Nonetheless, I agreed to join the Priderock team and work toward the objective of successfully launching the Fund in exchange for participating in monetary compensation (asset management fees and "promote") if /when the Fund was launched.

9. During a meeting with David Khoury in Palm Beach on or about April 27, 2016, David Khoury and I agreed that, if the Fund launched, I would receive $200,000 per year, which represented approximately 10% of the fixed management fees the Fund would receive each year during the term of the securities purchased by the Fund, plus 10% of the "promote."

10. If the Fund were not launched, I agreed I would not receive any compensation or reimbursement for all of my efforts.

11. Between July 2015 and the April 2017 launch of the Fund with the first purchase of K-Deal securities, I consulted and worked as a member of the Priderock team to further the objective of successfully launching the Fund.

12. Prior to the launch of the Fund, I discussed with other team members the possibility of launching subsequent funds and/or other investment vehicles in addition to the Fund.

13. David Worley and I on multiple occasions discussed how I would be compensated for any subsequent funds and/or other investment vehicles.

14. During the summer and fall of 2016, I requested of Priderock that we memorialize our agreement for the Fund discussed in paragraph 9 above, and I anticipated that during that process we would incorporate a broader relationship for my continued work on the Priderock team and compensation for any subsequent funds and/or other investment vehicles.

15. I also submitted a written request for reimbursement of out-of-pocket expenses that I incurred at Priderock request, to which Priderock responded that they required a contract specifying ownership of the intellectual property, which was used by the Fund, that I created and owned.

16. There having been no affirmative action by Priderock to memorialize in writing our agreement, and having been notified that Priderock required a contract in order for Priderock to pay reimbursements for requested expense items, in late October 2016 I myself drafted a document.

17. In that draft document, I addressed and sought to incorporate the following four concepts: a) our prior agreement on the Fund described in paragraphs 5 and 8 through 11 above;  b) reimbursement of expenses;  c) ownership of intellectual property; and d) a period of time for which I would continue to work on the Priderock team to launch subsequent funds and/or other investment vehicles and be compensated with a contingency consistent with our agreement on the Priderock Multifamily Debt Opportunity Fund described in paragraphs 5 and 8 through 11 above.

18. The series of draft proposals that went back and forth between Priderock and me, which are incompletely excerpted in Defendant's papers on its motion, were meant to address all four concepts above, not merely my work to launch the Priderock Multifamily Debt Opportunity Fund.

19. For example, in my October 24, 2016 draft proposal, the proposed four (4) year term was meant to correspond to the time period discussed in 17.d above.

20. Another example, in my draft proposal dated November 4, 2016, is the reference to an additional TBD compensation to be paid to me if any of my contacts or acquaintances invested in a future Priderock fund or investment vehicle at my suggestion. This was very clearly *not* in respect to the agreement we had about my compensation for the Priderock Multifamily Debt Opportunity Fund, but was in respect of potential other funds and investment vehicles on which we would have collaborated.

21. In my December 20, 2016 proposal, I attempted for the sake of a future relationship concerning other funds and investment vehicles to offer a compromise of 2 percentage points on all company incentive fees on all deals we might work on together, but Priderock was unwilling. I did not change the amount of fixed fee compensation ($200,000 per year) I was to receive. I only attempted to recast it as Priderock seemed to wish it described.

22. On April 20, 2017, after the Fund launched and no memorialization of our agreement concerning the Fund had materialized, I attempted again to compromise by 2 percent the promote share in connection with and in relation to the broader array items we were negotiating for the future. It was not that Priderock and I had never reached an

agreement as to my compensation for the Fund. We had reached that agreement in April 2016.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Signed and dated on December 18, 2018.

By: _____
Webster Hughes, Ph D