**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
Case No. 9:18-cv-80110-Rosenberg / Reinhart**

WEBSTER HUGHES,

                    Plaintiff,

vs.

PRIDEROCK CAPITAL PARTNERS, LLC,

                    Defendant.

_____

## <u>DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

## PRELIMINARY STATEMENT

To avoid summary judgment on a properly supported motion, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).   A plaintiff must produce not "merely colorable" but "significantly probative" evidence. *Anderson*, 477 U.S. at 249-50.

Plaintiff ignores these established legal requirements in attempting to avoid summary judgment, and he fails to identify any triable issue of material fact to support his opposition. Instead, he submits sweeping, conclusory assertions supported only by his own declaration in an effort to refute clear record evidence – consisting of his own deposition testimony, his emails and his written contract proposals) -- to escape application of the Florida statute of frauds to his oral contract claims and the fact that the parties never achieved an enforceable meeting of the minds on essential terms.   But, a party opposing summary judgment cannot create a genuine issue of material with a declaration that contradicts his prior deposition testimony or other evidence he authored.   *Calvo v. B & R Supermarket, Inc.*, 63 F. Supp. 3d 1369, 1372 (S.D. Fla. 2014) ("Plaintiff's Declaration cannot alone create a genuine issue of material fact, and the Court will disregard Plaintiff's Declaration when and to the extent it contradicts Plaintiff's deposition and other clear record evidence.")

Based on Plaintiff's testimony and documents he authored, it is undisputed there was no written contract between the parties, and the multi-year oral agreement Plaintiff alleges required his full time services for the duration of the Fund – at least 7 years, which self-evidently **could not** be performed within a year.   Accordingly, summary judgment in Priderock's favor is correct on Count I (breach of contract) and Count II (breach of contract implied-in-fact) because: (1) the oral agreement is barred by Florida's Statute of Frauds, and (2) for the separate and independent reason

the parties never reached agreement on essential terms of the purported oral agreement (a term of 2 or 7 or more years and compensation).

## I.    KEY UNDISPUTED FACTS

Generally, a court may not weigh conflicting evidence when considering a motion for summary judgment.  *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Plaintiff's admissions given in his deposition, emails and contract proposals he authored cannot be refuted by conflicting contentions in an after-the-fact declaration created purely to oppose a dispositive motion.  *Pennant v. Convergys Corp.*, 368 F. Supp. 2d 1307, 1312 (S.D.Fla.2005) ("The Court may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony.") (internal citations omitted).  Thus, despite Plaintiff's efforts, the essential record is undisputed:

- The parties never reached a written agreement setting the terms of Hughes' compensation for the work he performed or proposed to perform in the future on behalf of Priderock.  (Def.'s SOF 16; Pl.'s Resp. to Def.'s SOF 16, "Undisputed") [1]

- Without a written agreement, Hughes predicates his Complaint on an alleged oral contract.  Hughes alleges that on April 27, 2016 – a year before the Fund launched – the parties "orally agreed" that "Dr. Hughes would be compensated in the amount of $200,000 per year for the life of [the Fund], plus 10 percent of the 'promote share' of the returns of the Fund, reimbursement for his expenses, and a licensing fee arrangement." (Def.'s SOF 12; Pl.'s Resp. to Def.'s SOF 12, "Undisputed") [2]

---

[1] Defendant's Statement of Undisputed Material Facts (D.E. 53) will be cited as "Def.'s SOF" and Plaintiff's Response to Defendant's Statement of Material Facts and the Plaintiff's Statement of Additional Material Facts (D.E. 56) will be cited as "Pl.'s Resp. to Def.'s SOF".  Plaintiff's Additional Material Facts will be referenced as "Pl.'s SOF".

[2] In an effort to create a disputed fact, Plaintiff changes his Amended Complaint and now alleges the oral agreement of April 27, 2016 was **only** for "$200,000 per year, which represented a 10% share of the fixed management fees Priderock was to receive per year during the life of the securities purchased by the Fund, plus 10% of the 'promote'

- The life of Fund is seven years. (Def.'s SOF 13; Pl.'s Resp. to Def.'s SOF 13 ("Disputed. The term length of the Fund … [has] a seven-year average maturity.")

- Hughes understood the purported oral agreement with Priderock required him to perform some work (even if small) on an ongoing basis during the duration of the multi-year term.  (Def.'s SOF 14; Pl.'s Resp. to Def.'s SOF 14 -- Plaintiff does not dispute with record evidence)

- Despite the alleged April 2016 oral agreement, Hughes proceeded to submit a number of written contract proposals to Priderock starting in October 2016.  (Def.'s SOF 17; Pl.'s Resp. to Def.'s SOF 17 "Undisputed")

- Hughes' first written proposal dated October 24, 2016, and all subsequent revised proposals, defined the fixed duration/term of Hughes' employment to continue for multiple years.  (Def.'s SOF 20, 24, 29, 43-45, 49, 51; Pl.'s Resp. to Def.'s SOF -- Plaintiff does not dispute with record evidence)

- Each of Hughes' written contract proposals encompassed the entirety of his business relationship with Priderock beginning-to-end, including all work performed during the contingent pre-launch period from September 2015 to April 2017.  (Def.'s SOF 19, 23, 29, 48; Pl.'s Resp. to Def.'s SOF -- Plaintiff does not dispute with record evidence)

- Hughes admits Priderock, too, desired a multi-year contract requiring Hughes to devote 90 percent of his work time to Priderock preparing monthly updates to cash flows and financial models, among other tasks to be performed continually during the multi-year term.  (Def.'s SOF 32-35; Pl.'s Resp. to Def.'s SOF 32-33 "Undisputed" and SOF 34-35 -- Plaintiff does not dispute with record evidence)

- Hughes admits that after the Fund launched in April 2017 until June 2017 he worked on a "fully dedicated basis," "characterize[ing] it as essentially full-time work." (Def.'s SOF 15; Pl.'s Resp. to Def.'s SOF 15 "Undisputed")

## II.    THE STATUTE OF FRAUDS REQUIRES DISMISSAL OF COUNTS I AND II.

Florida's Statute of Frauds prohibits the enforcement of oral agreements not capable of being performed within one year. Fla. Stat. § 725.01.  Plaintiff acknowledges, "to make a parol contract void, it must be apparent that it was the understanding of the parties that it was not to be performed within a year from the time it was made." Pl.'s Opp. at 14, citing *Yates v. Ball*, 181 So.

---

that Priderock was to receive."   (Pl.'s SOF 89) Suddenly, the purported oral agreement does not include "reimbursement for expenses, and a licensing fee arrangement".

341, 344 (Fla. 1937). Courts rely on deposition testimony and written proposals to determine intent as to both the duration of the agreement and if it could be performed in a year.  Def.'s Motion at 6-7 (citing cases). Plaintiff's testimony, emails and written contract proposals establish the parties intended a multi-year agreement requiring Plaintiff to work on a full-time basis after the Fund launched establishing this work was incapable of being performed within a year.

### A. Plaintiff's Testimony, Emails and Contract Proposals Establish the Parties Intended a Multi-Year Agreement.

The undisputed record shows Hughes and Priderock intended a multi-year contract:

*First*, Hughes unequivocally testified he intended the agreement with Priderock would be for a multi-year term.  (Exhibit A, Hughes Dep. 81:12-18 ("Q: Your intent was to have a multiyear agreement? A: **Yes, that was my intent**.") (emphasis added)).

*Second*, Hughes testified that "the life of the Fund" is "seven-years…. which could extend to eight years."  (Exhibit A, Hughes Dep. 31:17-32:13; 97:9-16 (Q: "In your e-mail you mentioned again your preferences for fixed compensation to the life of the investment, and I understand from your earlier testimony, … that is matched to the life of the bond. So it could be seven years. It could be whatever the life of the bond is; is that right? A: Yes, it is."))

*Third*, the ten contract proposals confirm the parties contemplated and intended for Hughes' contract with Priderock to last multiple years.  (Def. Exhibits I – T.)

### B. Plaintiff's Testimony, Emails and Contract Proposals Establish the Parties Understood the Agreement Could Not Be Performed Within a Year.

Hughes admits the alleged multi-year contract required his continuous, full-time performance.  Plaintiff attempts to avoid the consequence of his testimony by arguing he finished his work when the Fund launched, which the record roundly refutes. Yet, Hughes' gambit to dodge the Statute of Frauds this way is blocked by the holding in *Food Fair Stores, Inc. v. Vanguard Inv.*

*Co.*, 298 So. 2d 515 (Fla. Dist. Ct. App. 1974), where the appellee had convinced the trial court

that their job was done when the initial investment was secured; the appellate court reversed:

> The trial court was perhaps misled by the fact that the appellee Vanguard's greatest contribution to the project which was the subject of the oral agreement was to secure the initial opportunity for investment in the Bahama Islands. This initial action on the part of Vanguard cannot be construed as the full performance by that entity inasmuch as the court correctly found that **the parties had continuing obligations and responsibilities in the establishment of future stores**. We hold therefore that consistent with the holding in *Yates v. Ball*, *supra*, and a host of other Florida cases, that an oral agreement will be barred if it is not to be performed within one year from the time it is made.

*Id*. at 517 (emphasis added).  Hughes tries leading this Court down the same path arguing his work

was complete when the Fund launched, but like *Food Fair Stores, Inc*., Hughes **admits** his

obligations and responsibilities continued **after the Fund launch,** thereby rendering performance

within a year impossible. (Exhibit A, Hughes Dep.  33:20-23 ("Q: After the fund is launched you

still have work to perform with respect to your model; is that correct? A: A small amount."); *id*. at

33:8-18 ("There is a small amount of work to be done on an ongoing basis."))  Plaintiff does not

(and cannot) undo his prior testimony by now arguing the work post-launch was diminimus.

(Def.'s SOF 14; Pl.'s Resp. to Def's SOF 14 ("Disputed. Any work after the launch would be

diminimus.")   Plaintiff testified and nowhere disputes he worked for Priderock on a "fully

dedicated basis," "characterize[ing] it as essentially full-time work" **after the Fund launched**

from April 2017 to June 2017 – not diminimus.  (Def.'s SOF 15; Pl.'s Resp. to Def.'s SOF 15

("Undisputed.")

**C.** **The "Performance Exception" to the Statute of Frauds Is Unavailing Because Plaintiff Does Not Seek Equitable Relief in Counts I and II.** [3]

Plaintiff's alternate route to escape the Statute of Frauds goes through the performance exception, arguing he "fully performed his agreed upon services." (Pl.'s Opp. at 16-20.) But, the route is blocked -- this exception does <u>not</u> apply to a breach of contract claim or a breach of contract implied-in-fact claim at law for damages.

"Florida courts have uniformly held that the performance exception to the Statute of Frauds, which arose in land sale cases, applies only when a plaintiff seeks purely equitable relief." *Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1194-95 (S.D. Fla. 2007); *see also BGW Design Ltd., Inc. v. Serv. Am. Corp.*, 10-20730-CIV, 2011 WL 13220382, at *7 n. 2 (S.D. Fla. Nov. 30, 2011) ("[Plaintiff] also argues that it fully performed…. The performance exception to the Statute of Frauds applies only when a plaintiff seeks equitable relief, which [plaintiff] has not done in this case."); *Chernys v. Standard Pac. of S. Fla., G.P. Inc.*, 07-21605-CIV, 2010 WL 11504280, at *5 (S.D. Fla. Feb. 10, 2010) ("[T]he rule limiting the doctrine of partial or full performance to cases in equity must be applied and the [] oral agreement is barred by the statute of frauds."); *Roberts v. Stutman*, 09-80490-CIV, 2011 WL 13225074 at *5 (S.D. Fla. Jan. 19, 2011) (same).

Plaintiff's reliance on *Law Offices of David J. Stern, P.A. v. U.S. Bank, Nat'l Ass'n*, No. 11-21397-CIV, 2011 WL 13223736 (S.D. Fla. June 10, 2011) and *Fresh Capital Financial Services, Inc. v. Bridgeport Capital Services, Inc.*, 891 So. 2d 1142, 1145 (Fla. Dist. Ct. App. 2005)[4], is

---

[3] Plaintiff retains his claim to recover for the work he performed under Count III (breach of contract implied-in-law). Damages under the common law claim for breach of contract implied-in-law, also known as quasi contract, are awarded on a theory of unjust enrichment. *Magwood v. Tate*, 835 So.2d 1241, 1243 (Fla. 4th DCA 2003). Under Florida law, unjust enrichment is an equitable remedy and is not available where there is an adequate legal remedy. *Supreme Const. Corp. v. Bank of Am. Corp.*, No. 10-cv-24094, 2011 WL 6070044, at *3 (S.D. Fla. Dec. 6, 2011)

[4] The other "performance exception" cases Plaintiff cites are also misplaced because they either: (1) cite to *Fresh Capital* as authority, *see, e.g., Merle Wood & Assocs. Inc. v. Trinity Yachts, LLC*, No. 10-61997-CIV, 2011 WL

mistaken. While *Law Offices of David J. Stern* and *Fresh Capital* generally state full performance by one party to an oral contract can remove the contract from the Statute of Frauds, these courts neither considered nor rejected the limitation of the performance exception to cases in equity and both were decided at the pleading stage. *See Law Offices of David J. Stern,* 2011 WL 13223736 at *2 (motion to dismiss denied); *Fresh Capital*, 891 So. 2d at 1144-46 (motion to dismiss reversed and remanded). Indeed, as the Eleventh Circuit subsequently noted, while some courts may have failed to correctly apply this rule, this does not "signal a change in the otherwise settled law of the state" and, indeed, these courts "seemed unaware of the equity limitation." *See Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991)

Here, the Complaint asserts a claim against Priderock for breach of contract and breach of contract implied-in-fact – claims for damages. (Def.'s Ex. F at ¶¶ 35-46) ("request[ing] the Court to enter a judgment … awarding Webster Hughes damages[.]") Even assuming Plaintiff has fully performed his part of the bargain (which he could not have), the performance exception is not available because Count I and II are claims for damages, not equitable relief.

**D.      Even if the Statute of Frauds' "Performance Exception" Applied, Plaintiff Has Not Fully Performed As He Admits Having to Perform Work *After* the Fund Launched.**

Even if the Statute of Frauds' "performance exception" applied, Plaintiff did not fully perform the purported oral agreement.[5] A party fully performs when there is nothing left to do, which is not the case here. *Food Fair Stores, Inc*, 298 So. 2d at 517 ("This initial action … cannot

---

845825 (S.D. Fla. March 7, 2011); *Luxor Agentes Autonomos de Investimientos, Ltda. v. Intertransfers, Inc.,* 12-20664-CIV, 2012 WL 13014340, at *2 (S.D. Fla. Apr. 30, 2012); (2) involve equitable claims, *see, e.g. Brodie v. All Corp. of USA*, 876 So. 2d 577, 578-80 (Fla. Dist. Ct. App. 2004); or (3) are out-of-state cases not relevant to Florida's limited Statute of Frauds exception for claims that seek purely equitable relief. (Pl.'s Opp. at 16-18.) (citing a 1982 Iowa decision, a 1991 Mississippi decision, a 1959 Pennsylvania decision, and a 2009 Illinois decision.)

[5] Without citing any record evidence, Plaintiff asserts, "He fully performed his agreed upon services – assisting Priderock with the launch of the Fund[.]" (Pl.'s Opp. at 16.) The record amply establishes otherwise, thus Plaintiff's unsupported contention goes nowhere. *See* Fed. R. Civ. P. 56.

be construed as the full performance by that entity inasmuch as the court correctly found that the

parties had continuing obligations and responsibilities in the establishment of future stores.")

Plaintiff testified he had continuing obligations **after the Fund launched** and he continued work

on a full-time basis for months **after the Fund launched**. (Def.'s SOF 14-15; Pl.'s Resp. to Def's

SOF 14-15)

### III. THERE WAS NEVER A MEETING OF THE MINDS ON ESSENTIAL TERMS OF THE ALLEGED ORAL AGREEMENT, THUS BARING ENFORCEMENT OF COUNTS I AND COUNT II.

Independent of the Statute of Frauds defense, summary judgment is due on Hughes' breach

of oral contract claim (Count I) and breach of contract implied-in-fact (Count II) because the record

establishes only unenforceable "agreement to agree," at best. A "so-called 'contract to make a

contract' is not a contract at all," "if the document or contract that the parties agree to make is to

contain any material term that is not already agreed on."   *Hulse v. Orthodontic Educ., Ltd.*, 05-cv-

594-J-32, 2011 WL 32437, at *3 (M.D. Fla. Jan. 5, 2011). In *In re Sherwood Investments Overseas*

*Ltd., Inc*., the Court explained:

> The key difference is the manner in which assent is ascertained: conduct as opposed
> to words. None of RBS's conduct shows an assent to be bound by Sherwood's
> audacious proposed contractual terms. "Because a contract implied-in-fact is a legal
> contract based on an unspoken agreement, and [Sherwood] presented no evidence
> from which a reasonable jury could find that an unspoken agreement existed
> between the parties."

No. 6:10-bk-00584-KSJ, 2015 WL 4486470, at *11 (Bankr. M.D. Fla. July 22, 2015), *aff'd*, No.

6:15-cv-1469-Orl-40TBS, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016).   Similar to *In re*

*Sherwood Investments*, nothing of Priderock's conduct shows an asset to be bound by Hughes'

proposed contract terms[6].

---

[6] The parties exchanged ten written proposals **after** Hughes alleged they reached an oral agreement, and they did not agree on the length of the contract term, nor did the agree on Hughes' compensation.  (Def.'s SOF 17-52) Plaintiff does not dispute the majority of the contract negotiations, *see* Pl. Resp. to Def.'s SOF at 17-19, 23, 27, 31-33, 36, 38,

Plaintiff's admission that he changed the terms of the purported oral agreement confirm there was no meeting of the minds on essential terms of a contract.[7] Hughes testified he changed the terms of the parties' oral agreement in November 2016 (**7 months** after the parties' purported oral agreement):

> Q [Priderock's counsel]: If you look at … Exhibit B to [Exhibit J], and that's the compensation you proposed.  **What happened to the $200,000 per year you allege you had orally agreed to?**
>
> A [Hughes]:   On the first front the 200,000 per year over time would actually come out a little bit more than the 10 percent of the fixed annual fee they received.  So I thought that it would be a cleaner agreement rather than saying 200 grand out of the fixed asset management fee, just to say 10 percent across the board. Because we had already agreed that I would get 10 percent of the promote and 10 percent of the annual or the quarterly asset management fee, which they received, would equate to pretty close to 200 grand.  **So I just simply proposed that we use 10 percent of all fees to simplify the agreement.**

---

41-42, 44, 48, 51-52.  And all the material facts Hughes attempts to "dispute" (with a vague reference to multiple conclusory paragraphs in declaration) are his own testimony and emails.  (*See* Pl. Resp. to Def.'s SOF at 20-22, 24-26, 28-30, 34-35, 37, 39, 43, 45-47, 49) (*citing* Pl. Ex. 6, Hughes' Declaration ¶¶ 16-22) Plaintiff cannot manufacture a fact dispute by submitting a declaration that directly contradicts clear record evidence.

[7] Plaintiff cites a number of cases arguing subsequent negotiations to memorialize an oral agreement does not render the oral agreement unenforceable.  (Pl.'s Opp. 13-14.) Yet, all Plaintiff's authority is distinguishable because the parties' conduct demonstrated assent, which the record here shows did not happen. *Cf.  New Dirt, Inc. v. Harrison*, 182 So. 3d 773, 775 (Fla. Dist. Ct. App. 2015) ("Cattell stated that the salaries should be $100,000 each, but 'have it as debt until we could generate cash to pay.' Harrison agreed that his salary should be $100,000, and that the salary payments should 'start together when we can afford it and pay out at an equal percentage (%) if 100% is not possible.' Harrison's salary, cash loans, and development debt was later reflected in the company books and records as liabilities of New Dirt."); *Dagnesses v. Target Media Partners*, 711 F. App'x 927, 934 (11th Cir. 2017) ("TMP argues only that the letter was not a binding contract because it disclaimed any intent to form a contract. The letter provided: '[Y]our employment with [TMP] is at-will and neither this letter nor any other oral or written representations may be considered a contract for any specific period of time.' This language is ambiguous; a jury could find that the parties did not disclaim an intent to form a contract altogether, but merely intended that the contract was terminable at will."); *Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*, No. 8:06-cv-421-T-33EAJ, 2009 WL 975740, at *5 (M.D. Fla. Apr. 9, 2009), aff'd, 356 F. App'x 221 (11th Cir. 2009) ("It is not disputed that the exact start-up costs for the Doubles Program were unknown until after the parties entered into the oral contract; however, both Webb and Adams, individuals in the shipping industry, were capable of determining the approximate cost of purchasing ten tractors, and the trailers, dollies, and other equipment needed for initiating and then 'ramping up' the Doubles Program fleet.")

(Def.'s SOF 26, citing Exhibit A, Hughes Dep. 59:24-60:14 (referencing Exhibit J at HUGHES_0001957, Exhibit B.) (emphasis added) [8]. Plaintiff cannot manufacture a fact dispute and refute this admission with conclusory statements offered in his recent declaration. *Faulk v. Volunteers of Am.*, 444 F. App'x 316, 318 (11th Cir. 2011) ("[T]he differences between Faulk's deposition and her declaration go beyond a few isolated inconsistencies; instead, her declaration conspicuously attempted to substantiate each and every claim that her deposition testimony left lacking. Therefore, the district court did not abuse its discretion in striking portions of Faulk's declaration to the extent it flatly contradicted her prior testimony."); *Aira v. Best Nat'l Vending, Inc.*, 11-21530-CIV, 2012 WL 4935086, at *10 (S.D. Fla. Oct. 16, 2012) ("To the extent that his subsequent affidavit attempts to create a fact question ... it is a sham and will not be considered.").[9] Hughes' deposition testimony and documents he authored establish the parties continued to negotiate the essential terms of an agreement but failed to agree to the duration and compensation, well after the point when Hughes insists an oral agreement was allegedly struck, thus vitiating any claim for breach of oral contract or breach of contract implied-in-fact.

  Dated: December 26, 2018                        Respectfully submitted,

                                        MRACHEK FITZGERALD ROSE
                                        KONOPKA THOMAS & WEISS, P.A.

---

[8] Pl.'s Resp. to Def.'s SOF 26 ("Disputed" with citations to Pl.'s Declaration ¶ 20 (asserting but pointing to no supporting evidence that Hughes' November 4, 2016 written proposal "was very clearly not in respect to the agreement we had about my compensation for the [Fund][.]")

[9] In a final try to avoid summary judgment, Plaintiff points to cases in which parties had a contract, but a discrete provision within the settled contract was vague or indefinite, which differs materially from the record here. (Pl.'s Opp. at 11-12.) For example, in *Community Design Corp. v. Antonell*, 459 So.2d 343 (Fla.Dist.Ct.App.1984), plaintiff sued the defendant corporation for failing to pay his bonus or paid vacation. The defendant argued the contract was too indefinite based on, among other factors, the uncertainty regarding the amount of the bonus. The court decided "[w]hile the exact amount of the bonus and the degree of completion required were disputed, there was sufficient evidence for the jury to find an oral contract between the parties." *Id.* at 345. The court did, however, note that "**the parties acknowledged [with respect to the amount of the bonus] that a particular amount was offered, which distinguishes this case from those in which the amount is indefinite or left for future agreement**." *Id.* at 345 n. 2 (emphasis added). The court stated that the amount of the bonus was between $20,000 and $35,000. *Id.* at 345 n. 1. Thus, the facts of *Antonell* differ materially from those here. Hughes and Priderock never acknowledged any agreement as to the terms of his compensation, an essential term of the contract.

505 South Flagler Drive
Suite 600
West Palm Beach, FL 33401
(561) 655-2250
(561) 655-5537 (facsimile)
rfitzgerald@mrachek-law.com

By: *s/ Roy E. Fitzgerald*
        Roy E. Fitzgerald

-and-

WINSTON & STRAWN LLP
William G. Miossi (*pro hac vice*)
Mary M. Lenahan (*pro hac vice*)
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5000
(202) 282-5100 (facsimile)
WMiossi@winston.com
MLenahan@winston.com

*Attorneys for Defendant Priderock Capital*
*Partners, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Reply Memorandum In Support of Its Motion for Partial Summary Judgment was served by CM/ECF on December 26, 2018, on:

John F. Mariani
Christopher W. Kammerer
Kammerer Mariani PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
(561) 990-1590
(561) 228-0998 (facsimile)
jmariani@kammerermariani.com
ckammerer@kammerermariani.com

*s/ Roy E. Fitzgerald*