**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:18-CV-80110-ROSENBERG/REINHART**

WEBSTER HUGHES,

    Plaintiff,

v.

PRIDEROCK CAPITAL PARTNERS, LLC,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**THIS MATTER** is before the Court on Defendant's Motion for Partial Summary Judgment [DE 52]. The Motion has been fully briefed, and the Court had the benefit of hearing from the parties' counsel at the Motion Hearing held on January 17, 2019. For the reasons set forth below, Defendant's motion is granted.

**I.    BACKGROUND**

In 2015, Webster Hughes and Priderock Capital Partners, LLC began working together to start the Priderock Multifamily Debt Opportunity Fund ("Fund"), an investment fund that acquires restricted mortgage backed securities offered by the Federal Home Loan Mortgage Corporation, known as Freddie Mac. DE 1, ¶ 13. There is no written contract between the parties. *See id.* ¶¶ 15–16.

Hughes predicates his Complaint on an alleged oral contract. *See id.* Hughes alleges on April 27, 2016, that the parties "orally agreed" that "Dr. Hughes would be compensated in the amount of $200,000 per year for the life of [the Fund], plus 10 percent of the 'promote share' of the returns of the Fund, reimbursement for his expenses, and a licensing fee arrangement." *Id.* ¶

18. Defendant moves for summary judgment on Plaintiff's breach of oral contract (Count I) and breach of contract implied-in-fact (Count II) claims for two independent reasons: (1) the alleged oral agreement is barred by Florida's Statute of Frauds, as a matter of law; and (2) there was no meeting of the minds on essential terms of the alleged agreement. DE 52.

At the outset of the case, Priderock moved to dismiss Count I and Count II under FRCP 12(b)(6) on grounds that the alleged oral contract is barred by Florida's Statute of Frauds. DE 9, 18. The Magistrate Judge, in a Report and Recommendation, denied Priderock's motion reasoning the "application of the statute of frauds to Counts I and II of the Complaint is more appropriately raised at a later stage of the proceedings when evidence can be presented as to the intent of the parties." DE 28, adopted by the Court at DE 29. Record evidence has now been presented to the Court revealing the parties' intent, and the Court finds Plaintiff's breach of oral contract (Count I) and breach of Contract implied-in-fact (Count II) are barred by the Statute of Frauds.

## II.    FACTS

Based on Plaintiff's testimony and documents that he authored, the following material facts are undisputed. The parties intended and contemplated a multi-year agreement. DE 53-1, Hughes Dep. 81:12-18 ("Q: Your intent was to have a multiyear agreement? A: Yes, that was my intent.") The agreement was for the life of the Fund, a period of at least 7 years. DE 53-1, Hughes Dep. 31:17-32:13; DE 53-17 (Priderock admitting the life of the Fund could be 10 years.) Hughes understood the alleged agreement required him to perform work continuously for Priderock during the multi-year term. DE 53-1, Hughes Dep. 33:20-23 ("Q: After the fund is launched you still have work to perform with respect to your model; is that correct? A: A small amount."); *id*. at 33:8-18 ("There is a small amount of work to be done on an ongoing basis."). Hughes' work during the life of the Fund included reviewing monthly Freddie Mac servicing reports to confirm cash flows and comparing actual numbers to previous projections. DE 53-1, Hughes Dep. 34:15-

35:15 (describing the monthly reviews, "Q. And was it your understanding that was a role you were going to play? A. Yes.").

The parties exchanged 10 written contract proposals. Hughes drafted and submitted the first proposal October 24, 2016, and he defined the duration of his employment contract to continue multiple years, as did every subsequent written proposal. DE 53-9. Each of Hughes' contract proposals encompassed the entirety of his business relationship with Priderock, inclusive of the work performed during the contingent pre-launch period from September 2015 to April 2017 and the post-launch period after April 2017. After exchanging more than ten written contract proposals from October 2016 to May 2017; DE 53, ¶¶ 19–47; and without reaching a final agreement, Priderock ended the negotiations and its relationship with Hughes in June 2017; DE 53, ¶ 52.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the record "show(s) that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). While the burden of establishing the nonexistence of any genuine issue of material facts falls on the party moving for summary judgment, the moving party satisfies this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

Once the moving party satisfies this burden, "the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Jacobs v. City of W. Palm Beach*, Case No. 9:14-CV-80964-ROSENBERG/BRANNON, 2015 WL 4742906, at *1 (S.D. Fla. Aug. 10, 2015) (internal quotations omitted). As the Eleventh Circuit explained, the existence of "a mere scintilla of evidence supporting the [nonmoving] party's position will not

suffice; there must be enough of a showing that the jury could reasonably find for that party."

*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

Generally, a court may not weigh conflicting evidence when considering a motion for summary judgment. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Plaintiff's admissions given in his deposition, emails and contract proposals he authored cannot be refuted by conflicting contentions in an after-the-fact declaration created purely to oppose a dispositive motion. *Pennant v. Convergys Corp.*, 368 F. Supp. 2d 1307, 1312 (S.D. Fla. 2005). The Court disregards Plaintiff's declaration (DE 56-6) to the extent it contradicts his previous deposition testimony and/or previous written admissions.

## IV.    STATUTE OF FRAUDS

Florida's Statute of Frauds prohibits the enforcement of oral agreements not performed within one year. Fla. Stat. § 725.01. Section 725.01 of the Florida Statutes provides, in pertinent part, that:

> No action shall be brought ... upon any agreement that is not to be performed within the space of [one] year from the making thereof ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith ....

Fla. Stat. § 725.01 (2019).

Hughes alleges the parties "orally agreed" on April 27, 2016, and/or "by their conduct" that "Dr. Hughes would be compensated in the amount of $200,000 per year for the life of [the Fund], plus 10 percent of the 'promote share' of the returns on the Fund, reimbursement for his expenses, and a licensing fee arrangement." (DE 56 at ¶ 12)  Counts I and II are each barred by

the Statute of Frauds because Plaintiff seeks to enforce an oral or implied-in-fact agreement for a multi-year term, which was not intended or capable of being performed within one year.[1]

### 1. The Parties' Intended and Contemplated a Multi-Year Agreement.

"Under well-settled Florida law, the statute of frauds bars the enforcement of a contract when the parties intended and contemplated that performance of the agreement would take longer than one year." *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991); *see also First Realty Inv. Corp. v. Gallagher*, 345 So. 2d 1088, 1089 (Fla. Dist. Ct. App. 1997) ("The primary factor to be utilized in determining whether or not an oral contract is to be performed within the one year limitation of the statute is, of course, the intent of the parties.")

"The intent of the parties may be inferred from the 'surrounding circumstances' or the 'object to be accomplished.'" *Dwight*, 947 F.2d at 459 (citing *Yates v. Ball*, 132 Fla. 132, 139 (1937)). Courts rely on deposition testimony and written proposals to determine intent. *See, e.g.*, *All Brand Importers, Inc. v. Tampa Crown Distribs., Inc.*, 864 F.2d 748, 750 (11th Cir. 1989) (citing parties' deposition testimony, among other evidence, as factors "that Tampa Crown and All Brand intended for their relationship to last for more than one year."); *Tydir v. Williams*, 89 So. 3d 1129, 1132 (Fla. Dist. Ct. App. 2012) (reversing jury verdict and finding contract barred by the statute of frauds because, "[i]n the present case, Williams' testimony confirmed the agreement to fund the new company was oral, but there was no evidence to show the parties ever contemplated the funding could be completed within the space of one year. To the contrary, Williams' testimony was clear that he would forgo payment of his share of profits for five years, at the conclusion of

---

[1] "Florida courts use breach of contract analysis to evaluate claims of breach of contract implied in fact[.]" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012). Here, Plaintiff's alleged "contract implied-in-fact" claim (Count II) is identical to his oral "contract" claim (Count I). Courts apply the Statute of Frauds with equal force to both oral contract and contract implied-in-fact claims. *See, e.g. Pineda v. PRC, LLC*, No. 1:11-CV-20894-JLK, 2011 WL 3022564, at *4 (S.D. Fla. July 22, 2011) ("The alleged oral agreement fails to meet the requirements of the Statute of Frauds because the implied contract would not necessarily be completed within one year.").

which he and Tydir would have the money necessary to launch the anticipated partnership.");

*LynkUs Commc'ns, Inc. v. WebMD Corp.*, 965 So. 2d 1161, 1165 (Fla. Dist. Ct. App. 2007) ("The fact that the business arrangement could commence within one year of the parties' alleged agreement is of no moment. The evidence before the trial court shows beyond dispute that the joint business arrangement which was contemplated by LynkUs – but never memorialized in a writing – would be a long-term arrangement or an arrangement that, by its very nature, would extend for more than a year.")

The undisputed evidence in the record establishes Hughes and Priderock intended a multi-year contract:  First, Hughes' deposition testimony establishes he intended a multi-year agreement with Priderock requiring ongoing work for the 7-year life of the Fund. Second, every written contract proposal exchanged by the parties required Hughes' active, full-time service to Priderock for a period of no less than two years.

Hughes testified he intended the agreement with Priderock would be for a multi-year term. DE 53-1, Hughes Dep. 81:12-18 ("Q: Your intent was to have a multiyear agreement? A: **Yes, that was my intent**.") (emphasis added.).  Such an oral multi-year agreement is barred by the Statute of Frauds.  *Fin. Healthcare Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cty*., 488 F. Supp. 2d 1231, 1239 (S.D. Fla. 2007) ("Here, the Contract was to be performed over the course of three years, making the statute of frauds applicable."); *Marcus v. Garland*, *Samuel & Loeb*, *P.C.*, 441 F. Supp. 2d 1227, 1232 (S.D. Fla. 2006) (barring an oral agreement by statute of frauds because plaintiff fully understood the agreement would potentially last several years).  Hughes also admits the alleged agreement obligated him to perform work on an "ongoing basis" after the launch of the Fund, including reviewing monthly Freddie Mac servicing reports and reconciling the model predictions with the actual numbers.  (DE 53-1, Hughes Dep. 34:15-35:15, 33:20-23;

33:8-18.) Hughes testified he worked for Priderock on a "fully dedicated basis," "characteriz[ing] it as essentially full-time work" and he provided no other services to any others during the nearly two-year time period, including after the Fund launched. DE 53-1, Hughes Dep. 36:1-16. Hughes admits that if the parties reached an acceptable agreement, he was willing to devote ninety percent of his time to Priderock. DE 53-1, Hughes Dep. 75:14-22; 78:2-3. It is clear from the Plaintiff's testimony the parties intended and contemplated the oral agreement would last longer than a year and would require continuing work during the multi-year life of the Fund.

Additionally, the parties exchanged ten written contract proposals between October 2016 and May 2017, and every version and/or communication on the topic expressed a clear intent for a multi-year term requiring Hughes continual services. DE 53-9 - 53-18. The written contract proposals confirm the parties contemplated and intended for Hughes' contract with Priderock to extend for multiple consecutive years, thus bringing it within the Statute of Frauds as a matter of law. *Alpha Data Corp. v. HX5, L.L.C.*, 139 So. 3d 907, 910 (Fla. Dist. Ct. App. 2013) ("Here, it is undisputed that HX5 never signed the proposed Mentor–Protege Agreement ADC sent to it. It is clear from the record and, according to the terms of the unsigned agreement that ADC sent to HX5, and which forms the basis of the alleged oral contract, this partnership was intended to last three years, thus bringing it within the Statute and, consequently, unenforceable.")

### 2. The Alleged Multi-Year Agreement Duration is for the "Life of the Fund" not an Indefinite Period of Time.

During the Motion Hearing, Plaintiff argued the parties' alleged oral agreement was "indefinite" and thus not barred by the Statute of Frauds citing *Law Offices of David J. Stern, P.A. v. U.S. Bank, Nat'l Ass'n*, No. 11-21397-CIV, 2011 WL 13223736 (S.D. Fla. June 10, 2011)[2]

---

[2] The Court notes that the cited sections of *Law Offices of David J. Stern, P.A. v. U.S. Bank, Nat'l Ass'n*, No. 11-21397-CIV, 2011 WL 13223736, at *2 (S.D. Fla. June 10, 2011) are unpersuasive here, because the case was decided

which cites *Byam v. Klopcich*, 454 So.2d 720, 721 (Fla. Dist. Ct. App. 1984). In *Byam*, the oral employment agreement was a contract of indefinite duration, which is not the case here. *Byam*, 545 So. 2d at 21 ("[T]he appellee agreed to pay the appellant the greater of $500 or 20 percent of sales per week, and the appellant agreed to work for the appellee. Such a contract is not within the Statute of Frauds because nothing indicates that the contract was other than a contract for an indefinite period.")

Here, the "life of the Fund" was understood by the parties to be a period of well more than one year, and the work Hughes was to provide could not be completed in a year. Hughes admits that the "the life of the Fund" is "seven-years…. which could extend to eight years." DE 53-1, Hughes Dep. 31:17-32:13; 97:9-16. On very similar facts to the instant case, the Court in *Roberts v. Stutman*, No. 09-80490-CIV, 2011 WL 13225074, at *3 (S.D. Fla. Jan. 19, 2011), determined that the parties' alleged oral agreement for "the life of the account" ran afoul of the Statute of Frauds because a number of "factors indicate that Roberts and RBCCM intended for their relationship to last for more than one year." *Id*. at *5. Similarly, the undisputed record here establishes the "life of the Fund" is greater than one year, confirming the parties intended and contemplated a multi-year agreement.

### 3. The Alleged Multi-Year Agreement Could Not Be Performed Within One Year.

Any contention that the alleged multi-year contract could be performed within one year is refuted by Hughes' admission that he was obligated to provide continuing work after the Fund launched in April 2017. DE 53-1, Hughes Dep. 33:8-35:15 ("Q: After the fund is launched you still have work to perform with respect to your model; is that correct? A: A small amount.").

---

at the pleading stage and allows the Complaint to proceed "[u]nder a fair reading of the Complaint." (Internal citations omitted.)

Likewise, every written contract proposal Hughes submitted confirmed his testimony that his continuing work obligations to Priderock could not have been performed in a period of less than one year. DE 53-9, 53-10, 53-11, 53-12, 53-14, 53-16, and 53-18. Consequently, Hughes' oral and implied-in-fact contract claims are conclusively barred by the Statute of Frauds. *Chernys v. Standard Pac. of S. Fla., G.P. Inc.*, Case No. 07-21605-CIV-LENARD/GARBER, 2010 WL 11504280, at *4 (S.D. Fla. Feb. 10, 2010) ("Thus, it is clear that both the object of the alleged agreement, a promise to pay Chernys profit sharing more than two years after the date of the agreement, and the circumstances surrounding the agreement, indicate the parties could not have understood the agreement to have been performed within one year from the time it was made.").

### 4. The "Performance Exception" to the Statute of Frauds Is Unavailing Because Plaintiff Does Not Seek Equitable Relief.

The performance exception to the Statute of Frauds is unavailable to Hughes because his breach of contract claims are brought at law for damages, not equitable relief. "Florida courts uniformly have held that the performance exception to the Statute of Frauds, which arose in land sale cases, applies only when a plaintiff seeks purely equitable relief." *Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1194-95 (S.D. Fla. 2007).

## I. CONCLUSION

For all of the foregoing reasons, Plaintiff's first two claims for breach of a contract and a contract-implied-in-fact are both barred by the Statute of Frauds, and Defendant is entitled to summary judgment on those claims. The Court need not reach Defendant's second argument, that there was no meeting of the minds in regards to the alleged contract, because the Statute of Frauds defense is dispositive.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Partial Motion for Summary Judgment [52] is **GRANTED**.

2. Summary Judgment is granted in favor of Defendant as to Counts I and II.

3. Count III remains operative and this case will proceed accordingly.

4. The Status Conference in this matter remains set for **January 30, 2019**.

**DONE and ORDERED** in Chambers at West Palm Beach, Florida, this 28th day of

January, 2019.

Copies furnished to Counsel of Record        ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE