UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:18-CV-80110-ROSENBERG/REINHART

WEBSTER HUGHES,

   Plaintiff,

v.

PRIDEROCK CAPITAL PARTNERS, LLC,

   Defendant.
   _____/

## ORDER ON PREJUDGMENT INTEREST

**THIS MATTER** is before the Court on Plaintiff Webster Hughes' Memorandum Regarding Prejudgment Interest (the "Memorandum"), DE 112. Defendant, Priderock Capital Partners, LLC, opposes the request for prejudgment interest and filed a Response at DE 113. Plaintiff replied at DE 124.

### I. BACKGROUND

This case was tried before a jury March 4–6, 2019 on Plaintiff' single claim for unjust enrichment against Defendant.[1] *See* DE 107; DE 108; DE 119. The jury awarded Plaintiff 1.25 million dollars. Verdict, DE 111. Plaintiff argues that he is entitled to prejudgment interest, dating back to either the date on which Plaintiff ceased working for Defendant, June 1, 2017, or from the date Plaintiff's Complaint was filed, January 21, 2018. Defendant contends that Plaintiff is entitled only to "prejudgment interest from March 6, 2019 (the entry of the Verdict) until the date the Final Judgment is entered." Def. Resp., DE 11, 3.

---

[1] Defendant's Complaint included claims for breach of contract and breach of contract-implied-in-fact. *See* DE 1. However, these claims were disposed of at Summary Judgment. *See* DE 65.

To provide further background on this case, the Court refers to its description of the facts from its Order on Summary Judgment, DE 65.

> In 2015, Webster Hughes and Priderock Capital Partners, LLC began working together to start the Priderock Multifamily Debt Opportunity Fund ("Fund"), an investment fund that acquires restricted mortgage backed securities offered by the Federal Home Loan Mortgage Corporation, known as Freddie Mac. DE 1, ¶ 13. There is no written contract between the parties. *See id.* ¶¶ 15–16.
>
> Hughes predicates his Complaint on an alleged oral contract. *See id.* Hughes alleges on April 27, 2016, that the parties "orally agreed" that "Dr. Hughes would be compensated in the amount of $200,000 per year for the life of [the Fund], plus 10 percent of the 'promote share' of the returns of the Fund, reimbursement for his expenses, and a licensing fee arrangement." *Id.* ¶ 18. Defendant moves for summary judgment on Plaintiff's breach of oral contract (Count I) and breach of contract implied-in-fact (Count II) claims for two independent reasons: (1) the alleged oral agreement is barred by Florida's Statute of Frauds, as a matter of law; and (2) there was no meeting of the minds on essential terms of the alleged agreement. DE 52. . . . Record evidence has now been presented to the Court revealing the parties' intent, and the Court finds Plaintiff's breach of oral contract (Count I) and breach of Contract implied-in-fact (Count II) are barred by the Statute of Frauds.

Accordingly, summary judgment was granted in Defendant's favor on Counts I and II of the Complaint. DE 65. As part of its efforts to strike Plaintiff's jury demand, Defendant unilaterally stipulated to liability on the sole remaining count for unjust enrichment. *See* Def. Mot. to Strike, DE 73; Def. Stip. 83. Specifically, Defendant stipulated that "Hughes provided certain services to Priderock from September 2015 through May 2017." Def. Stip., DE 83 ¶ 3. On this Court's Order, Defendant revised its Answer in light of the stipulation and added the following admissions:

> 49. Priderock admits that Hughes has conferred some benefit to Priderock. . . .
>
> 50. Priderock admits the circumstances are such that Priderock should, in all fairness be required to pay for the benefit. . . .

2

52. Priderock admits Dr. Hughes is entitled to receive the value of the benefit that Priderock received from his service. . . .

DE 97 ¶¶ 49–52. In the parties' Joint Stipulation, Defendant again stipulated that Hughes "worked with Priderock from mid-to-late 2015 though May 2017." Joint Stip., DE 98, 4.

## II. DISCUSSION

As a federal court sitting in diversity jurisdiction, the Court must look to the law of the forum state to determine a party's entitlement to prejudgment interest. *American Dredging Co. v. Lambert*, 153 F.3d 1292, 1297–98 (11th Cir. 1998). "[I]t is well-settled that prejudgment interest is due as a matter of law when a verdict liquidates the pecuniary losses suffered by the plaintiff." *Capital Environmental Serv., Inc. v. Earth Tech, Inc.*, 25 So. 3d 593, 597 (Fla. 1st DCA 2009). In Florida, the award of prejudgment interest is based on the "loss theory," whereby "prejudgment interest is merely another element of pecuniary damages." *Argonaut Ins. Co. v. May Plumbing Coi*, 474 So. 2d 212, 215 (Fla. 1985). "Once a verdict has liquidated the damages as of a date certain, computation of prejudgment interest is merely a mathematical computation." *Id.* The task of awarding prejudgment interest is a "purely ministerial duty" and is not discretionary. *Id.*

"[T]here are two prerequisites to an award of prejudgment interest: (1) out-of-pocket pecuniary less; and (2) a fixed date of that loss. A claim may become liquidated, . . . and thus susceptible to prejudgment interest when a verdict has the effect of fixing damages as of a prior date." *H&S Corp. v. US Fidelity Guar. Co.*, 667 So. 2d 393, 399 (Fla. 1st DCA 1995). This analysis applies to prejudgment interest in unjust enrichment cases. *See TracFone Wireless, Inc. v. Hernandez,* 196 F. Supp. 3d 1289, 1303 (S.D. Fla. 2016) ("Florida law provides that prejudgment interest is available for unjust enrichment and torts claims where the amount of a

3

plaintiff's pecuniary loss is clear from the outset. . . . [O]nce the amount of damages is determined, prejudgment interest is allowed from the date of the loss or the accrual of cause of action.").

"Prejudgment interest is allowed on only liquidated claims, that is, sums which are certain, but which the defendant refuses to surrender." *Air Ambulance Professionals, Inc. v. Thin Air*, 809 So. 2d 28, 31 (Fla. 4th DCA 2002); *see also TracFone*, 196 F. Supp. 3d 1289, 1303. "The ministerial act of computing prejudgment interest discussed in *Argonaut* requires that damages be as of a date certain." *Pharmacy Mgmt. Serv., Inc. v. Perschon*, 622 So. 2d 75, 76 (Fla. 2nd DCA 1993). *See also Araya-Solorzano v. Repub. Nicar.*, Case No. 1:12-22663-UU, 2013 WL 12080169 (S.D. Fla. June 12, 2013) (refusing to award prejudgment interest on unjust enrichment claim because the damages "did not represent a commercial obligation due on a date certain").

"Damages can become fixed on different dates for purposes of an award of prejudgment interest" including the jury-determined loss date or the date of the jury's verdict. *See Capital Environmental Serv., Inc.*, 25 So. 3d at 597. "Florida law supports the proposition that prejudgment interest can be awarded properly from the latest possible date of loss." *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 795 (11th Cir. 2005).

Here, Plaintiff takes the position that the date of loss was the date that Plaintiff ceased working for Defendant, at the end of May 2017. *See* Pl. Mem., DE 112 ¶ 4. Plaintiff cites to *Montage* for the proposition that a finding of an accrual date by the jury is unnecessary, because Priderock stipulated to the period of time he worked for Priderock. *See* Pl. Mem., DE 112 ¶ 7; *Montage Group, Ltd. V. Athle-Tech Computer Sys., Inc.*, 889 So. 2d 180, 199 (Fla. 2nd DCA

2004). In *Montage*, prejudgment interest was awarded from the date the plaintiff/appellee's software was sold by the defendant/appellant to a third party. *See Montage*, 889 So. 2d at 199.

The Court disagrees with Plaintiff that the date Plaintiff stopped working for Defendant is the appropriate "date of loss" for the purposes of determining prejudgment interest.

Plaintiff prevailed at trial on a claim for quasi-contract, or unjust enrichment.

> The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.

*Agritrade, LP v. Quercia*, 253 So. 3d 28, 33 (Fla. 3rd DCA 2017) (quoting *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So.2d 876, 879 (Fla. 3d DCA 1996)). As the parties acknowledged in their Pretrial Stipulation; DE 98, 4; damages for a claim of unjust enrichment are measured in terms of the benefit conferred to the defendant. *See e.g.*, *14th Heinberg, LLC v. Terhaar and Conley Gen. Contractors, Inc.*, 43 So. 3d 877, 881 (Fla. 1st DCA 2010).

Throughout this litigation, and during trial, Plaintiff stressed that Priderock would reap the rewards of the benefit he conferred for years into the future, and sought to define damages in terms of the future profitability of the fund Hughes had helped Priderock to create. *See, e.g.*, Compl., DE 1 ¶ 17–18; *see also* Trial Tr. Vol. II, 211:1–7 (Plaintiff's examination) ("Q: What benefit did you provide to Priderock? A: I brought the expertise that allowed this group of a handful of guys to put together this business deal. . .[that] is *going to generate* 20 to $30 million of fees going into their pockets, and I think I am owed a –.") (emphases added). Furthermore, Plaintiff's counsel stressed in closing that one way the jury could assess the benefit Plaintiff

5

conferred on Defendant would be to look at the management fees and income the fund would generate over a ten-year period:

> You heard Dr. Hughes testify that using the model and producing the future income to the property –through the management fees, this was anticipated to be a ten-year stream coming to [Priderock]. . .
>
> They earned, you can see, $2,000,000 a year going forward. . . what you are really considering here is what is the value of Dr. Hughes' service to Priderock.
>
> You can view it on an hourly rate like we just did, or can you say, well, he is part of a team. . . .
>
> And so, if you think of it that way, what was the success here? Establishment of a fund to generate $20 million in fees over a ten-year period. You say, okay, how does that reflect Webster's contribution to the success of the fund, the benefit he gave them? It is not one percent.

*See* Trial Tr. Vol. III, 147:18–148:25 (Plaintiff's closing argument). Counsel repeatedly recommended this method of determining damages to the jury:

> Or you could look at it another way, what Dr. Hughes stated that his contribution to the success was, overall success. I think he acknowledged that everybody was important, and he said five to ten percent of the overall success was attributable to him. . . .
>
> 5 percent of $20 million in the management fees going forward that he helped create. The benefit that Priderock got, they are going to earn $20 million, so he is responsible for 5 percent of that, that is $1 million.

Trial Tr. Vol III, 149:1–151:1 (Plaintiff's closing argument). Plaintiff visually bolstered this argument with a slide show, which suggested either computing damages based on paying Plaintiff hourly or based on paying Plaintiff 5% of $20,000,000 in management fees. *See* DE 126. These slides included a large "pie" diagram, which suggested to the jury that they needed to award a 5% slice of that pie to Plaintiff. *See id.* The jury ultimately awarded him $1.25 million. DE 111.

6

Based on the foregoing, the Court cannot conclude that Plaintiff's loss accrued on June 1, 2017. Defendant stipulated to the date on which Plaintiff stopped working for Priderock, but did not stipulate to a date on which Plaintiff should have been paid for his services. *See* Def. Stip., DE 83; Joint Stip. DE 98, 4. Indeed, Plaintiff may have stopped working for Defendant in May of 2017, but the arguments made to the jury indicate that the jury may have based its damages award on *future* benefits to Defendant. Thus, the jury's verdict did *not* "have the effect of fixing damages as of a *prior* date." *H&S Corp.*, 667 So. 2d at 399 (emphases added). Instead, Plaintiff's losses were liquidated on the date of the jury's determination of damages. *See Perdue Farms Inc. v. Hook*, 777 So. 2d 1047, 1053 (Fla. 2nd DCA 2001). Unlike in *Montage*, where the benefit to the defendant accrued on the date defendant sold plaintiff's software to a third party, thereby fixing the value to the defendant at a precise date, here, Plaintiff argued consistently that the primary value to Defendant would be in the income Defendant could expect to receive over time. As a result, the Court finds Plaintiff's arguments unavailing, based on the case law discussed above and the specific facts of this case.

This is not to say that Plaintiff is not entitled to prejudgment interest at all. Rather, Plaintiff is entitled to prejudgment interest from the date of the jury's verdict, when his damages were liquidated, until the rendition of final judgment in this case.

### III. CONCLUSION

It is hereby **ORDERED** and **ADJUDGED** that Plaintiff is entitled to prejudgment interest dating from March 6, 2019, the date the jury rendered its verdict. *See* DE 111. Plaintiff is **ORDERED** to submit a proposed final judgment order, consistent with this Order, within two (2) business days of the rendition of this Order. Plaintiff shall submit the proposed order by

7

emailing the proposed order in Word format to the Court's email address, Rosenberg@flsd.uscourts.gov and by copying opposing counsel.

Finally, based on the procedural posture of this case, the Clerk of the Court is directed to administratively **CLOSE** this case for statistical purposes.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 22nd day of March, 2019.

Copies furnished to:
Counsel of Record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE